IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WILLIAM G. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04cv3228 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing nos. 36 and 38, the defendants' Motions to Dismiss. In his complaint, the plaintiff, William G. Miller, a prisoner in the custody of the Nebraska Department of Correctional Services ("DCS"), asserts federal civil rights claims pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his safety and medical needs while in the custody of DCS, in violation of the Eighth Amendment to the United States Constitution. The plaintiff also asserts a tort claim under the court's supplemental jurisdiction, having submitted an administrative claim under the State Tort Claims Act.

The plaintiff alleges a custom or policy, known informally as "the running of the bulls," in which corrections officers at the Nebraska State Penitentiary ("NSP") allow inmates en masse to stampede the canteen in the NSP yard at intervals, with the result that slighter or unwary inmates can be trampled. On August 19, 2003, the plaintiff was injured in one of such events, and he sustained a broken and "mangled" leg. Thereafter, the plaintiff complains, he experienced substantial delays in receiving any medical care and did not receive adequate pain medication or medical treatment.

In filing no. 36, defendants-Dan Danaher, John Bagley, Diana Severson, Harold

1

Clarke, Michael Kenney, Randy Kohl, Richard Elliott, and the State of Nebraska (acting through the NSP and DCS)[1] allege a variety of grounds for dismissal of the complaint.

## State Tort Claims Act

First, the defendants correctly assert that the Eleventh Amendment to the United States Constitution bars the plaintiff from bringing his claim under the State Tort Claims Act in this court.  See generally Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 39-40 (1994): "The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals."

The Nebraska Legislature has waived sovereign immunity for certain kinds of tort actions against the State and its agencies.  See Neb. Rev. Stat. §§ 81-8,209 *et seq.*, the Nebraska State Tort Claims Act.  However, the waiver of sovereign immunity under the State Tort Claims Act does not extend to actions maintained in federal court.  See Neb. Rev. Stat. § 81-8,214:   "Suits shall be brought in the district court of the county in which the act or omission complained of occurred or, if the act or omission occurred outside the boundaries of the State of Nebraska, in the district court for Lancaster County."  Thus, § 81-8,214 is a limited waiver of sovereign immunity which permits an action against the State or a state agency **exclusively** in state district court.

The court's general ability to exercise supplemental jurisdiction does not override the

---

[1] As stated in the court's Order on Initial Review, the plaintiff names the Nebraska State Penitentiary ("NSP") and the Nebraska Department of Correctional Services ("DCS") among the defendants. Liberally construed, the plaintiff's claims against NSP and DCS are actually claims against the State of Nebraska, which is the entity responsible for the operations, practices and policies of the State's prison facilities.

sovereign immunity of the states recognized and preserved by the Eleventh Amendment. Therefore, the plaintiff's claim(s) under the State Tort Claims Act will be dismissed without prejudice, and the plaintiff may file such claim(s) in the appropriate state court.

### Immunity from Damages

In addition, the Eleventh Amendment bars the plaintiff from recovering damages from the State of Nebraska or from State employees in their official capacity. State sovereign immunity, recognized and preserved by the Eleventh Amendment to the United States Constitution, prohibits a private party from suing the State or its agencies and state employees in their official capacity, except insofar as the State or the Congress of the United States has abrogated the state's sovereign immunity. See, e.g., Morstad v. Department of Corrections and Rehabilitation, 147 F.3d 741, 744 (8th Cir. 1998): "[A]bsent a waiver, the Eleventh Amendment immunizes the state and its officials from § 1983 liability." See also Burk v. Beene, 948 F.2d 489, 492-93 (8th Cir. 1991): "Eleventh Amendment jurisprudence is well-settled: 'a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.'..." (Citations omitted.) No waiver of sovereign immunity applies to this case.

### Injunctive Relief

The plaintiff has been released on parole. Therefore, injunctive relief is no longer recoverable now that the plaintiff has been discharged from custody. No injunctive relief may be recovered to improve conditions at a prison from which the plaintiff has been transferred or released. "A claim for equitable relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" Randolph v. Rodgers, 170

F.3d 850, 856-57 (8th Cir. 1999). When "an inmate has been transferred to another institution, his claim for injunctive relief against the warden of the first prison to improve the former prison's conditions is moot." Id. at 857, *citing* Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). The same is true after release from confinement. Thus any claim for injunctive relief in this case has become moot.

## Respondeat Superior

There is no equivalent in the federal civil rights laws to the common law tort liability based on respondeat superior. Under 42 U.S.C. § 1983, a defendant may not be held liable on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by other persons. See, e.g., Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), *citing* Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989): "Rigorous standards of culpability and causation must be applied to ensure that [an employer] is not held liable solely for the actions of its employees .... The purpose of such a stringent standard is to prevent § 1983 liability from collapsing into state tort law or into respondeat superior liability, an intent not contemplated by § 1983."

Similarly, supervisor liability under § 1983 must be based on some form of actual and direct participation in the constitutional violation. See, e.g., Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002): "We have held a supervisor is only liable 'for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation.'" (Citation omitted.) Thus, this court will dismiss the plaintiff's claims against Harold W. Clarke, former Director of DCS, and Michael Kenney, the Warden of NSP, insofar as the

4

plaintiff's claims against those defendants are based on vicarious liability. Insofar as the plaintiff's claims may involve some form of direct participation by those defendants in constitutional violations, the claims are not dismissed. Whether any culpable participation by Clarke and Kenney occurred will have to await the development of a factual record.

### Dr. Hathaway

In filing no. 38, Dr. Hathaway states that he was served with process beyond the time allowed by the court (see filing no. 33 indicating service by the U.S. Marshal on Dr. Hathway on March 22, 2005). However, the court issued a summons and forwarded it with the complaint to the Marshal on March 3, 2005 (filing no. 18). The court had previously granted the plaintiff an extension of time until March 9, 2005 to effect service of process (filing no. 16). The record does not explain the Marshal's delay in serving the summons between March 3 and March 22, 2005, but that delay is not attributable to the plaintiff. Therefore, the plaintiff is hereby granted nunc pro tunc a further extension of time to effect service on Dr. Hathaway up to and including the date the U.S. Marshal actually accomplished service.

Dr. Hathaway also objects to suit under the State Tort Claims Act against him in federal court. For the same reasons as stated for the other defendants, the plaintiff will have to bring his claim under the State Tort Claims Act against Dr. Hathaway in the appropriate state district court.

Dr. Hathaway acknowledges that the plaintiff submitted grievances but states that the grievances were returned unanswered because they were untimely. Accordingly, the plaintiff exhausted all "*available*" grievance procedures within the meaning of 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a) states: "No

action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Only grievance procedures which are in reality **available** to a prospective plaintiff must be exhausted. See, e.g., Lyon v. Vande Krol, 305 F.3d 806, 808-09 (8th Cir. 2002).

### Remaining Eighth Amendment Claims Against All Defendants

The plaintiff's claims of cruel and unusual punishment are inherently factual. A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests only the legal sufficiency of the plaintiff's complaint if the factual allegations in the complaint are accepted as true. Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998). See also Browning v. Clinton, 292 F.3d 235, 241-42 (D.C. Cir. 2002): "[W]e accept the plaintiff's factual allegations as true and construe the complaint 'liberally,' 'grant[ing] plaintiff[ ] the benefit of all inferences that can be derived from the facts alleged,' .... At the Rule 12(b)(6) stage, we do not assess 'the truth of what is asserted or determin[e] whether a plaintiff has any evidence to back up what is in the complaint.'" (Citations omitted.) Thus, a claim should be liberally construed in the light most favorable to the plaintiff and should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). In light of that strict standard, the remaining parts of the defendants' Motions to Dismiss are denied.

IT IS THEREFORE ORDERED:

1. That filing nos. 36 and 38, the defendants' Motions to Dismiss are granted in part and denied in part as set forth below;

     2.     That the plaintiff's claims brought under the State Tort Claims Act are dismissed without prejudice and may be reasserted in the appropriate state court;

     3.     That the plaintiff's civil rights claims for damages against the State of Nebraska and its employees in their official capacity, for injunctive relief, and for liability premised on principles of respondeat superior are dismissed with prejudice; and

     4.     That in all other respects, filing nos. 36 and 38 are denied.

November 15, 2005.                    BY THE COURT:

                                                /s *Richard G. Kopf*
                                                United States District Judge